**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

EJENIE M.,

                                        Plaintiff,              5:23-CV-1251
                    v.                                          (DNH/CFH)


COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

─────────────────────────────

**APPEARANCES:**                        **OF COUNSEL:**

Hiller Comerford Injury & Disability Law      JUSTIN M. GOLDSTEIN, ESQ.
6000 North Bailey Avenue - Suite 1a
Amherst, New York, 14226
Attorney for plaintiff

Social Security Administration                JASON P. PECK, ESQ.
6401 Security Boulevard
Baltimore, Maryland 21235
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

       Ejenie M.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying her application for supplemental security income benefits.  See Dkt. No. 1.

───────────────────

[1] This matter was referred to the undersigned for completion of a Report and Recommendation in
accordance with General Order No. 18 and Local Rule 72.3(d).  See Dkt. Nos. 4, 5.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the
Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018
to better protect personal and medical information of non-governmental parties, this Report-
Recommendation and Order will identify plaintiff's last name by initial only.

On May 23, 2024, plaintiff moved for judgment on the pleadings. See Dkt. No. 15.[3] On October 2, 2024, the Commissioner cross-moved for judgment on the pleadings. See Dkt. No. 18.[4] Concurrently, the Commissioner requested that the Court extend the time to file the cross motion pursuant to Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure. See Dkt. No. 17. Plaintiff did not oppose the Commissioner's request. See id. On October 16, 2024, plaintiff filed a reply brief. See Dkt. No. 19.

The Court grants the Commissioner's unopposed request to accept his belatedly-filed cross motion and deems it to be timely filed. See Dkt. No. 17. Further, for the reasons stated below, the undersigned recommends plaintiff's motion be granted, the Commissioner's motion be denied, and the Commissioner's decision be reversed and remanded for further proceedings.

## I. Background and Procedural History

On September 4, 2019, plaintiff filed a Title XVI application for supplemental security income benefits, alleging a disability onset date of July 18, 2018. See T. at 204-10.[5] Plaintiff asserted that she was disabled due to "surgery left leg, diabetic, COPD [chronic obstructive pulmonary disease], PTSD [post-traumatic stress disorder], asthma, fibromyalgia, rheumatoid arthritis, learning disability, depression, nerve damage left side, [and] low vision right eye." Id. at 85.

---

[3] Citations to the parties' briefs refer to the pagination generated by CM/ECF, located in the header of each page.

[4] This matter has been treated in accordance with General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

[5] "T." followed by a number refers to the pages of the administrative transcript. See Dkt. No. 10. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

The Social Security Administration ("SSA") denied the claim initially on February 21, 2020, and again on reconsideration on September 14, 2020.  See T. at 97, 117. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), see id. at 148-51, and ALJ Robyn L. Hoffman held a hearing on January 29, 2021.  See id. at 32-62. On March 30, 2021, the ALJ issued an unfavorable decision.  See id. at 14-27.  On September 13, 2021, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  See id. at 1-7.  Plaintiff filed a complaint in the district court, contending that the ALJ erred in finding she was not disabled between September 4, 2019, and September 17, 2021.[6]  See id. at 1347-48.  Plaintiff and the Commissioner stipulated to a remand for further proceedings, and on March 24, 2022, the undersigned remanded plaintiff's case pursuant sentence four of 42 U.S.C. § 405(g).  See id. at 1353-55.

On September 1, 2022, the Appeals Council remanded plaintiff's case to an ALJ for further proceedings.  See T. at 1358-60.  On April 7, 2023, ALJ Hoffman held a second hearing.  See id. at 1307-18.  On June 16, 2023, the ALJ issued an unfavorable decision.  See id. at 1285-1300.  Plaintiff timely commenced this action before the Court on October 6, 2023.  See Dkt. No. 1.

## II. Legal Standards

### A. Standard of Review

Sentence four of 42 U.S.C. § 405(g) grants the court the authority "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In reviewing the Commissioner's final

---

[6] Plaintiff filed a subsequent Title XVI application on September 17, 2021, and the SSA found plaintiff disabled from this date forward.  See T. at 1360.  This finding is not disputed in the instant case.

decision, a district court may not determine de novo whether an individual (the "claimant") is disabled. See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). The district court may reverse the Commissioner's final decision only if the ALJ failed to apply the correct legal standards or support the decision with substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal citations omitted). This is "a very deferential standard of review," meaning that once an ALJ finds facts, the court can reject them "only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotations marks omitted); see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (reminding that it is for the ALJ to weigh conflicting evidence in the record) (citing Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the court should not affirm even though the ultimate conclusion is arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the ALJ applied the correct legal standards, and substantial evidence supports the decision, the court must uphold the Commissioner's conclusion even if the evidence is "susceptible to more than one rational interpretation." Schillo v. Kijakazi, 31 F.4th 64, 74 (2d Cir. 2022) (quoting McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014)).

4

**B. Determination of Disability**

Under 42 U.S.C. § 423, every individual who is under a disability shall be entitled to a disability benefits.  42 U.S.C. § 423(a)(1)(E).  Disability is defined as is the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A "medically-determinable impairment" is an affliction that is so severe it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3); see also Ventura v. Barnhart, No. 04-cv-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) ("Determinations of severity are based on objective medical facts, diagnoses or medical opinions inferable from these facts, subjective complaints of pain or disability, and educational background, age, and work experience.") (citing, inter alia, Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

To determine whether the claimant is entitled to disability benefits, courts use a five-step evaluation, based on 20 C.F.R. § 416.920, as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has

an impairment which is listed in [20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")]. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The plaintiff bears the burden of proof at the first four steps, and the Commissioner bears the burden at step five to show that the plaintiff is able to engage in gainful employment somewhere. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).

### III. Five-Step Disability Evaluation

The ALJ began by noting the procedural history for this case, including that the matter was again before her, and that she was only to consider whether plaintiff was disabled between September 4, 2019, and September 16, 2021. See T. at 1285-86.

Relevant here, the ALJ noted that in the September 1, 2022, remand order,

[T]he Appeals Council directed me to give further consideration to the medical source opinions and prior administrative medical findings pursuant to the provisions of 20 CFR § 416.920c; give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR

§ 416.945 and Social Security Ruling 85-16 and 96-8p); and if warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14)[.]

Id. at 1286 (citing id. at 1356-62).

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff "has not engaged in substantial gainful activity since September 4, 2019, the application date, through September 16, 2021[.]" T. at 1288. At step two, the ALJ found that, from September 4, 2019, through September 16, 2021, plaintiff had the following severe impairments: "peripheral vascular disease (status post left lower extremity arterial bypass and stent placement in the right lower extremity), type 2 diabetes with peripheral neuropathy, asthma, schizoaffective disorder, post-traumatic - stress disorder, and bipolar disorder." Id. at 1289. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. See id. at 1290. The ALJ then concluded that, between September 4, 2019, and September 16, 2021, plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined by 20 C.F.R. § 416.967(b), except that she:

[Could only] occasionally lift and carry twenty pounds; frequently lift and carry ten pounds, sit for up to six hours, and stand or walk for two hours, all in an eight-hour workday with normal breaks[;] should avoid exposure to excessive amounts of respiratory irritants such as dust, odors, fumes, and gases and extreme hot and cold temperatures[;]

[Could only] perform[] work that needs little or no judgment to do simple duties that may be learned on the job in a short period of time[; could] understand and follow simple instructions and directions, perform simple tasks independently, maintain attention/concentration for simple tasks, regularly attend to a routine and maintain a schedule,

7

[and] relate to and interact appropriately with all others to the extent necessary to carry out simple tasks; [and] can handle simple, repetitive work-related stress in that [she] can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require [her] to supervise or manage the work of others.

Id. at 1292-93.  At step four, the ALJ determined that plaintiff had no past relevant work.

See id. at 1299.  At step five, the ALJ considered plaintiff's RFC, age, education, and work experience, as well as the medical-vocational guidelines.  See id. at 1299 (citing 20 C.F.R. Part 404, Subpart P, Appendix 2, (the "Grids")).  The ALJ concluded that, between September 4, 2019, and September 16, 2021, plaintiff could perform jobs that exist in significant numbers in the national economy under the Grids.  See id.  Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, between September 4, 2019, through September 16, 2021."  Id. at 1300.

### IV. Discussion

Plaintiff argues that the ALJ: (1) "erred when failing to consider that [p]laintiff was found disabled as of September 17, 2021, which was affirmed by the Appeals Council, and when relying upon an insufficient record"; and (2) failed to "identify substantial evidence supporting the [RFC] finding and when failing to follow the remand order." Dkt. No. 15 at 1.  Thus, plaintiff contends that the Commissioner's decision should be remanded for further administrative proceedings.  See id. at 35.

The Commissioner argues that ALJ Hoffman: (1) "adequately and accurately considered that the Commissioner found [p]laintiff disabled in a subsequent application related to a period of time not before this Court"; and (2) otherwise identified substantial evidence supporting the RFC and complied with the Appeals Council's remand order. Dkt. No. 18 at 2.

8

### A. Step Three Determination on Plaintiff's Peripheral Arterial Disease

Plaintiff's first challenge centers on the ALJ's consideration of plaintiff's peripheral arterial disease ("PAD"), and explanation of Listing 4.12 at step three.  See Dkt. No. 15 at 12-18.  Plaintiff highlights that the SSA found her disabled under Listing 4.12 from September 17, 2021, onward due to her PAD.  See T. at 1360.  Plaintiff argues that, because the record contains evidence that her PAD has been severe since before 2019, the subsequent disability determination is material to whether she was disabled between 2019-2021.  See Dkt. No. 15 at 12-14.  Next, plaintiff contends that, even in the absence of the subsequent determination, the medical record contains evidence supporting a disability finding under Listing 4.12 between 2019 and 2021.  See id. at 14-18.

### 1. Legal Standards at Step Three

"Plaintiff has the burden of proof at step three to show that [her] impairments meet or medically equal a Listing."  Rockwood v. Astrue, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009).  "To match an impairment in the Listings, the claimant's impairment must meet all of the specified medical criteria of a listing."  Loescher v. Berryhill, No. 16-CV-300 (FPG), 2017 WL 1433338, at *3 (W.D.N.Y. Apr. 24, 2017) (internal quotation and citation omitted); see also 20 C.F.R. § 416.925(c)(3) ("We will find that your impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement.").  If the impairment does not meet the criteria of a listing, it can medically equal in severity and duration the criteria of a listed impairment.  See 20 C.F.R. §§ 416.925(c)(5), 416.926(a).  "If a claimant's impairment manifests only some of [a

Listing's] criteria, no matter how severely, such impairment does not qualify."
Rockwood, 614 F. Supp. 2d at 272 (internal quotations and citations omitted).

An ALJ is required to provide an explanation "as to why the claimant failed to meet or equal the Listings, '[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings.'" Rockwood, 614 F. Supp. 2d at 273 (quoting Kuleszo v. Barnhart, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002)). "[I]t is the ALJ's responsibility . . . to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review." Loescher, 2017 WL 1433338, at *3 ("The Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered."). However, "[a]n ALJ's unexplained conclusion [at step three] of the analysis may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence." Ryan v. Astrue, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (quoting Berry, 675 F.2d at 469).

### 2. Analysis

To be found disabled under Listing 4.12 for PAD, the evidence must show "appropriate medically acceptable imaging causing intermittent claudication" and "resting ankle/brachial systolic blood pressure ratio of less than 0.50." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 4.12 (internal citations omitted). If this ratio is 0.50 or above, the severity of the impairment would be evaluated under Listing 4.12B-D, which requires a showing of a "[d]ecrease in systolic blood pressure at the ankle on exercise . . . of 50 percent or more of pre-exercise level and requiring 10 minutes or more to return

to pre-exercise level," "[r]esting toe systolic pressure of less than 30 mm," or "[r]esting toe/brachial systolic blood pressure ratio of less than 0.40." See id.; see also id. § 4.00G7b.

Here, the ALJ found that plaintiff's PAD did not meet or medically equal the severity of Listing 4.12 at step three, stating at step three that plaintiff "had sufficient circulation to her lower extremities, good biphasic signal and normal velocities." See T. at 1289-90 (citing id. at 798, 802). Later in the decision, the ALJ highlighted medical records between 2019-2021 regarding plaintiff's PAD, including: (1) her PAD surgery on her left leg in January 2019, see id. at 525; (2) post-surgery, her continued complaints of pain in the left leg but normal exam findings from her vascular surgeon, Dr. M. Asad Khan, M.D., see id. at 806-10; (3) resolution of her left leg pain by July 2020, but complaints of pain and Dr. Khan's diagnosis of PAD in her right leg, see id. at 804; (4) plaintiff's PAD surgery in her right leg on September 1, 2020, see id. at 800, 804; (5) her report to Dr. Khan, two weeks after this surgery, that her "right leg pain had resolved and she was doing well," id. at 798; and (5) her subsequent complaints of pain and the results of a November 2, 2020, exam that "showed sufficient circulation to the lower extremities and vascular, sensory, and motor examination was normal," id. at 796. See id. at 1296. The ALJ noted two consultative exams in November 2019 and August 2020, and the agency medical opinion of Dr. A. Auerbach, M.D., each of whom acknowledged plaintiff's left leg surgery but none noted any significant limitations due to plaintiff's leg impairments. See id. at 1294-95 (citing id. at 98-116, 768, 779).

Though the medical records showed plaintiff had intermittent claudication during the relevant period, all but one from the relevant time showed that plaintiff's resting

ankle/brachial systolic blood pressure ratio was above the 0.50 threshold, and the evidence does not support a disability finding under subsections B-D of Listing 4.12. See T. at 796, 798, 802, 804, 808; see also Dkt. No. 18 at 6-7 (Commissioner's summation of the evidence). The ALJ's discussion of this evidence in the RFC section, alongside her step-three conclusions, are sufficient for the undersigned to conclude that the ALJ properly considered and explained her findings on plaintiff's PAD under Listing 4.12. See William H. v. Comm'r of Soc. Sec., No. 1:21-cv-01142 (EAW), 2023 WL 4445585, at *4 (W.D.N.Y. Jul. 11, 2023) (finding support for the ALJ's step three rejection of Listing 4.12 from evidence cited "in the other portions of the ALJ's decision") (citing Berry, 675 F.2d at 469 ("[T]he absence of an express rationale does not prevent us from upholding the ALJ's determination regarding appellant's claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence.")).

Plaintiff contends that the ALJ's explanation at step three ignores the fact that on September 19, 2020, Dr. Khan recorded a right ankle/brachial systolic blood pressure of 0.43. See T. at 798. Plaintiff argues that the ALJ should have found Listing 4.12A met, given that there is a medical record showing a result below 0.50. See Dkt. No. 15 at 15. Plaintiff is correct that the ALJ did not cite this finding from Dr. Khan, and ALJ's are not permitted to cherry pick around probative evidence. See Artinian v. Berryhill, No. 16-cv-4404 (ADS), 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018) ("'Cherry picking can indicate a serious misreading of evidence, failure to [take] all evidence [] into account, or both.'") (emphases added) (quoting Younes v. Colvin, No. 1:14-cv-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015), citing Genier v. Astrue, 606 F.3d 46,

12

50 (2d Cir. 2010)).  However, this was the only record demonstrating a result below the 0.50 threshold for either leg during the relevant period, and as noted above, all other records during this time showed results above the 0.50 threshold.  See infra.  Thus, the ALJ did not err in rejecting a finding of disability under Listing 4.12A.  See 20 C.F.R. § 416.925(c)(3) ("We will find that your impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement.") (emphasis added).

Plaintiff contends that the multiple records demonstrating a result above 0.50 were not explicitly cited by the ALJ at step three, and the Court should decline to take up the Commissioner's post-hoc rationalization by citing to records the ALJ failed to highlight in that step.  See Dkt. No. 19 at 2-3; cf. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (a reviewing court may not accept appellate counsel's post hoc rationalizations for agency action).  However, as discussed infra, the ALJ cited to many of these records later in the decision.  See Wanda N. v. Comm'r of Soc. Sec., No. 6:21-cv-358 (TJM), 2022 WL 4376484, at *7 (N.D.N.Y. Sept. 22, 2022) (reminding that substantial evidence can be found to support an ALJ's conclusions where the court can glean the ALJ's rationale from the decision as a whole) (citing John L. M. v. Kijakazi, No. 5:21-cv-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022)); see also Brault, 683 F.3d at 448 (reminding that the ALJ "is not required to discuss every piece of evidence submitted").  To the extent plaintiff requests that the Court consider additional evidence during the relevant period that could support a finding of disabled under Listing 4.12, the undersigned cannot do so, as this goes against the standard of review in Social Security cases.  See id. (reminding that the substantial evidence

standard is "very deferential," meaning once an ALJ finds facts, the court can reject them "only if a reasonable factfinder would have to conclude otherwise"); see also Ryan v. Comm'r of Soc. Sec., No. 21-2947-cv, 2022 WL 17933217 at *2 (2d Cir. Dec. 27, 2022) (summary order) (reminding that ALJs do not have to "'state on the record every reason justifying a decision' and '[are] not required to discuss every single piece of evidence submitted'") (quoting Brault, 683 F.3d at 448).

Plaintiff also contends that the ALJ's discussion at step three does not thoroughly explain whether the evidence medically equaled Listing 4.12. See Dkt. No. 15 at 15. However, Social Security Ruling ("SSR") 17-2p does not require an ALJ articulate a rationale on medical equivalence. See SSR[7] 17-2p, Titles II & XVI: Evidence Needed by Adjudicators at the Hearings & Appeals Council Levels of the Admin. Rev. Process to Make Findings About Med. Equivalence, 2017 WL 3928306, at *4 (S.S.A. Mar. 27, 2017) (stating that the ALJ "is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment" if the ALJ "believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment").

Plaintiff also contests the ALJ's reliance on the medical opinion of Dr. A. Auerbach, M.D., who reviewed the record at the reconsideration stage. See Dkt. No. 15 at 17. Plaintiff contends that the ALJ should have procured an updated medical opinion because Dr. Auerbach did not mention Listing 4.12 or plaintiff's PAD, and he issued his opinion just two weeks after plaintiff's right leg surgery and without the benefit of Dr.

---

[7] Social Security Rulings do not have the force of law but are binding on "all components of the Social Security Administration." Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984).

Khan's recent notes.  See T. at 98-116 (Sept. 14, 2020, reconsideration decision); see id. at 800 (Dr. Khan's Sept. 1, 2020, post-surgery note).  However, Dr. Auerbach considered all the evidence available at the time, and he explicitly noted plaintiff's peripheral artery disease in the left leg and plaintiff's complaints of pain due to circulation problems in both legs.  See T. at 111.  Further, the ALJ noted the timing of Dr. Auerbach's opinion, only finding it "partially persuasive" because of medical records that post-dated the doctor's review.  Id. at 1295.  The ALJ was within her authority to make persuasiveness findings on Dr. Auerbach's opinion and reject those portions that were inconsistent with the entire medical record.  See 20 C.F.R. § 416.920c.  The ALJ's persuasiveness findings do not detract from her conclusion at step three because, as discussed above, substantial evidence supported the ALJ's findings on Listing 4.12.  See William H., 2023 WL 4445585, at *4.

Finally, plaintiff argues that the ALJ should have considered the Commissioner's determination on her September 17, 2021, disability application, which was not admitted into evidence in the instant case.  See Dkt. No. 15 at 12-14.  "[T]he mere existence of a subsequent award of benefits is not, in and of itself, new and material evidence warranting remand."  Lovell v. Saul, 414 F. Supp. 3d 398, 405 (W.D.N.Y. 2019) (citing Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 653 (6th Cir. 2009)).  However, plaintiff cites several cases where courts have held that a subsequent favorable decision of disability can be material if it "sheds light on the seriousness of [plaintiff's] condition at the time of the first ALJ's decision and is relevant to that time frame."  Mikol v. Barnhart, 554 F. Supp. 2d 498, 504 (S.D.N.Y. 2008); Sears v. Colvin, No. 8:12-cv-570 (MAD/ATB), 2013 WL 6506496, *8 (N.D.N.Y. Dec. 12, 2013).  Plaintiff contends that this

subsequent decision is material to whether her PAD met Listing 4.12 between 2019-21 because she was found disabled from 2021 onward based on her PAD, and the medical records before the Court do not show a worsening of her PAD between 2019-21.  See Dkt. No. 15 at 12-14.  Thus, plaintiff contends that the subsequent decision may demonstrate her PAD was as severe in 2019 as it was in 2021, and without this subsequent decision, it is "impossible" to determine what evidence the ALJ considered and deemed sufficient under Listing 4.12.  See id.

However, the undersigned need not guess at whether the subsequent decision could shed light on the severity of plaintiff's PAD between 2019-21, as this very issue was discussed at the administrative hearing on April 7, 2023:

> ALJ: All right. And [attorney], let me just address you, the subsequent application appears to have been granted based on her equaling a listing, I believe it was 4.02 . . . . Is it your contention that she equal[ed] the listing before the subsequent protective filing date?
>
> ATTY: No, Judge. It is not.
>
> ALJ: Did something happen that she equaled it in September [2021]?  I don't know if you b[r]ought the -- or helped her bring this subsequent application.
>
> ATTY: We did -- just give me one second.
>
> ALJ: And I'm asking you not because I'm tricking you, just I'm asking you because –
>
> ATTY: Oh, yeah. I know.
>
> ALJ: -- I wasn't sure if I should send this to a cardiologist to see if she equaled a listing even before, you know, the – that established onset date of disability was based on the protective filing date of the subsequent application.
>
> ATTY: Yeah. I'm going over my notes from the prior claim. The peripheral artery bypass on the right leg done on July 8th

of 2022, and stent was placed in the leg January 12th of 2022. So there was a lot that happened in terms of the cardiovascular disease after –

ALJ: Okay.

ATTY: -- that decision was issued.

ALJ: Okay.  I'll look at what's before me and determine whether or not a medical expert review might be warranted in the event the at least the cardiovascular issue predated September of 2021.  But I'll reserve on that.  I'll take a look and I think I misspoke.  I think it's 4.12(a) is what the equals listing was found to be.  All right.  If there's nothing further then, we will adjourn and as I said, if I need anything further, I'll be in touch with [plaintiff's attorney].

T. at 1316-17.  Given plaintiff's admission at the hearing that the subsequent decision was based on events occurring after 2021, the undersigned finds that it would shed no light on the severity of plaintiff's PAD between 2019-21, and so the ALJ did not err in omitting the subsequent decision from the record.  See Oaks v. Colvin, No. 13-cv-917 (JTC), 2014 WL 5782486, at *7 (W.D.N.Y. Nov. 6, 2014) (finding no error in the ALJ's non-disability determination where, among other things, the plaintiff's representative admitted at the administrative hearing that the plaintiff's physical impairments were under control and not at issue during the relevant period).

Given the above, the undersigned finds that the ALJ did not err at step three in explaining her findings on plaintiff's PAD under Listing 4.12.  See William H., 2023 WL 4445585, at *4 (holding that substantial evidence supported the ALJ's findings regarding the plaintiff's peripheral arterial disease, where the medical records cited throughout the decision did not show the plaintiff's resting ankle/brachial systolic blood pressure fell below 0.50 over the duration of the claim, and where none of the other sub-criteria of Listing 4.12 were met).

17

**B. RFC and Appeals Court Order**

Plaintiff's second point on appeal is styled as one challenging whether the ALJ followed the directives of the Appeals Council and otherwise supported the RFC with substantial evidence.  See Dkt. No. 15 at 1.  Upon closer inspection, however, plaintiff raises multiple arguments in this second point, contending that the ALJ failed to follow the Appeals Council's remand order regarding the medical evidence, opinion evidence, and RFC formulation surrounding plaintiff's physical limitations and use of a cane, and her mental limitations.[8]  See id. at 24-35.

**1. Legal Standards**

**a. Appeals Court Remand Order**

"[W]here a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court."  Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co., 762 F.3d 165, 175 (2d Cir. 2014).  This rule applies in the Social Security context pursuant to the regulations, as ALJ is directed to "take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."  20 C.F.R. § 416.1477(b).

A failure to comply with the Appeals Council's remand order may be grounds for remand.  See Dommes v. Colvin, No. 3:15-cv-977 (GTS), 2016 WL 7104900, at *4-5 (N.D.N.Y. Dec. 6, 2016); Mortise v. Astrue, 713 F. Supp. 2d 111, 123-24 (N.D.N.Y. 2010).  However, where an issue is not "'precluded by remand order or the judgment of

---

[8] Plaintiff's second point on appeal also challenges the ALJ's handling of plaintiff's complex regional pain syndrome.  See Dkt. No. 15 at 21-24.  Given that this argument challenges the ALJ's findings at step two and beyond, it is discussed in Section IV.C., supra.

the court in the prior judicial review, that issue may be decided differently . . . on remand if the Commissioner applies the correct legal standard and substantial evidence in the record as a whole supports the decision.'" <u>Gusky v. Astrue</u>, 954 F. Supp. 2d 180, 190 (W.D.N.Y. 2013) (quoting <u>Thompson v. Astrue</u>, 583 F. Supp. 2d 472, 475 (S.D.N.Y. 2008); <u>see</u> <u>also</u> <u>Marvin v. Colvin</u>, No. 3:15-cv-74 (GLS/CFH), 2016 WL 2968051, at *2 (N.D.N.Y. May 20, 2016) (in the absence of limiting instructions or court findings, the Commissioner may revisit on remand any issues relating to the application for benefits) (citing <u>Thompson</u>, 583 F. Supp. 2d at 475).

### b. Medical Opinion Evidence

For claims filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ['PAMFs'], including those from [a claimant's] medical sources."  20 C.F.R. § 416.920c(a).  Instead, an ALJ is to evaluate medical opinions and PAMFs by considering their "persuasiveness."  <u>See</u> <u>id.</u>  In determining how "persuasive" a medical opinion or PAMF is, an ALJ must "consider" the following factors:  "supportability, consistency, treatment relationship, specialization, and 'other factors.'"  <u>Id.</u> § 416.920c(a) and (c)(1)-(5).  However, in many cases, the ALJ only need "explain" how the supportability and consistency factors were considered, as they are "the most important factors."  <u>Id.</u> § 416.920c(b)(2); <u>see</u> <u>also</u> <u>id.</u> § 416.920c(b)(2)-(3) (stating that the ALJ need not discuss the remaining factors unless the ALJ finds "two or more medical opinions or [PAMFs] about the same issue are both equally well-supported [] and consistent with the record [] but are not exactly the same").

For supportability, the regulations state:  "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMFs], the more persuasive the medical opinion(s) or [PAMFs] will be."  20 C.F.R. § 416.920c(c)(1); see also Kathleen A. v. Comm'r of Soc. Sec., No. 3:20-cv-1034 (LEK), 2022 WL 673824, at *4 (N.D.N.Y. Mar. 7, 2022) (noting that the supportability analysis "focuses on 'how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations'") (quoting Carmen M. v. Comm'r of the Soc. Sec., No. 20-cv-06532 (MJR), 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021)).  For "consistency," the regulations state:  "[t]he more consistent a medical opinion(s) or [PAMFs] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or [PAMFs] will be."  20 C.F.R. § 416.920c(c)(2); see also Kathleen A., 2022 WL 673824, at *5 ("In the consistency analysis, an ALJ must look outside the medical opinion itself to 'evidence from other medical sources and nonmedical sources in the claim,' and will find the medical opinion more persuasive the more consistent it is with these external sources.") (quoting 20 C.F.R. § 404.1520c(c)(2); citing Galo G. v. Comm'r of the Soc. Sec., No. 20-cv-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021)).

ALJs do not have to "'state on the record every reason justifying a decision' and '[are] not required to discuss every single piece of evidence submitted.'"  Ryan, 2022 WL 17933217 at *2 (quoting Brault, 683 F.3d at 448).  However, they must articulate how persuasive they found the medical opinions and PAMFs.  20 C.F.R. § 416.920c(b).  "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases

[the] explanation upon a misreading of the record, remand is required." Rivera v. Comm'r of Soc. Sec., No. 19-cv-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) (quoting Andrew G. v. Comm'r of Soc. Sec., No. 3:19-cv-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020)), report and recommendation adopted 2021 WL 134945 (Jan. 14, 2021).

### c. Residual Functional Capacity

A claimant's RFC represents a finding of the range of tasks she can perform notwithstanding the impairments at issue. See 20 C.F.R. § 416.945(a); Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 33 (2d Cir. 2013) (summary order). To properly ascertain a claimant's RFC, an ALJ must assess plaintiff's exertional capabilities, such as her ability to sit, stand, walk, lift, carry, push and pull. See 20 C.F.R. § 416.945(b). Nonexertional capabilities, including impairments that result in postural and manipulative limitations, must also be considered. See id.

As with other steps of the sequential evaluation, an RFC determination is informed by consideration of "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3); Tankisi, 521 F. App'x at 33; see also Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (reminding that the RFC determination must be supported by substantial evidence). An ALJ's RFC conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision, [because an ALJ is] entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). When finding a claimant's RFC, the ALJ must specify those functions that the

claimant can perform, and conclusory statements concerning a claimant's capabilities will not suffice. <u>Martone</u>, 70 F. Supp. 2d at 150 (citing <u>Ferraris</u>, 728 F.2d at 587).

## 2. Analysis

### a. Physical Limitations

Plaintiff's point on appeal regarding her physical limitations is multifaceted, as she argues that the ALJ failed to follow the Appeals Council's remand order, failed to resolve inconsistencies in the medical opinions surrounding her use of a cane and postural abilities, and failed to otherwise support the physical limitations in the RFC with substantial evidence. <u>See</u> Dkt. No. 15 at 24-28.

Here, the ALJ found that plaintiff had the RFC to do light work, with the additional restriction, relevant here, that she could stand or walk for two hours in an eight-hour workday. T. at 1292. In doing so, the ALJ noted the medical opinions from Dr. Kalyani Ganesh, M.D., Dr. Elke Lorensen, M.D., and Dr. Auerbach, finding each "partially persua[sive]." T. at 1294-95. Dr. Ganesh opined after a November 19, 2019, exam that plaintiff had "no gross limitations sitting, standing, or walking, moderate limitations for lifting, carrying, pushing, and pulling, and a cane would be only as needed." <u>Id.</u> at 1294 (citing <u>id.</u> at 767-73). Dr. Lorensen opined after an August 12, 2020, exam that plaintiff had "no gross limitation sitting, standing, walking[, but had] moderate limitations for bending, lifting, and carrying." <u>Id.</u> at 1294 (citing <u>id.</u> at 778-81). Dr. Auerbach opined on September 14, 2020, after reviewing the record on reconsideration, that plaintiff could stand/walk for four hours, "occasionally climb ramps or stairs, ladders, ropes or scaffolds, and can occasionally balance, stoop, kneel, crouch or crawl[.]" <u>Id.</u> at 1294-95 (citing <u>id.</u> at 109-10). However, the ALJ did not include a limitation based on the use of

a cane, nor any limitations for bending, climbing, balancing, stooping, kneeling, crouching, or crawling.  See id. at 1292.

### i. Use of a Cane

In rejecting the opinion of Dr. Ganesh that plaintiff would require a cane "as needed," the ALJ reasoned that this was "not consistent with the fact that the claimant did not use an assistive device during the subsequent consultative evaluation" with Dr. Lorensen.  T. at 1294 (citing id. at 779).  Additionally, the ALJ noted that though Dr. Ganesh noted plaintiff's use of a cane at the November 2019 exam, the doctor stated "[i]t does not appear to be absolutely necessary except as needed."  Id. at 768.  Later in the decision, the ALJ's noted plaintiff's use of a cane and Dr. Ganesh's statement alongside medical records showing normal mobility and range of motion at various medical appointments.  See id. at 1297.  Given the ALJ's expressed rationale and citation to inconsistent medical records, the undersigned finds the ALJ did not err in resolving the conflicting records surrounding plaintiff's use of a cane.  See Daphne L. M. C. v. Comm'r of Soc. Sec., No. 1:21-cv-1135 (DEP), 2023 WL 2087977, at *6-7 (N.D.N.Y. Feb. 17, 2023) (finding substantial evidence supported the ALJ's rejection of a cane-based limitation where, among other things, the record showed that the plaintiff used a cane at some of her medical appointments, where an examining physician opined the cane was not medically necessary, and where no other doctor opined such a limitation).  Plaintiff's citation to other evidence, see Dkt. No. 15 at 26-27, appears simply to be a request for the Court to resolve the inconsistency in her favor, which is impermissible.  See Daphne L. M. C., 2023 WL 2087977, at *7 (citing Melanie L. v.

Comm'r of Soc. Sec., 22-cv-0087 (ATB), 2022 WL 17992220, at *9-10 (N.D.N.Y. Dec. 29, 2022) (concluding that the plaintiff's argument regarding use of a cane was simply a "disagreement over arguably conflicting evidence in the record")).

Plaintiff also argues the ALJ failed to follow the Appeals Council's remand order on this issue.  See Dkt. No. 15 at 19.  The remand order specifically noted that, in the first decision, the ALJ "stated that Dr. Ganesh's and Dr. Lorensen's opinions were consistent [with each other], but Dr. Ganesh opined that the claimant would use a cane 'as needed,' and Dr. Lorensen did not."  T. at 1358 (citing id. at 24).  Thus, the Appeals Council ordered that "further evaluation of these opinions is necessary on remand."  Id. at 1359.  As noted above, the ALJ performed this "further evaluation," and so the undersigned finds no error in the ALJ's interpretation of the Appeals Council's orders on plaintiff's need for a cane.  See 20 C.F.R. § 416.1477(b); Lara M. v. Comm'r of Soc. Sec., No. 5:22-cv-1407 (AMN/ML), 2023 WL 10365082, at *12 (N.D.N.Y. Dec. 20, 2023) (finding Appeals Council's order satisfied "on its face" where the remand order directed the ALJ to reexamine the plaintiff's impairments and the ALJ did so; and noting the plaintiff's argument was simply a disagreement with the ALJ's second conclusion), report and recommendation adopted sub nom. Lara J. M. v. O'Malley, No. 5:22-cv-1407 (AMN/ML), 2024 WL 862196 (N.D.N.Y. Feb. 29, 2024).

### ii. Postural Limitations

Despite noting Dr. Lorensen's opined limitations that plaintiff had "moderate limitations for bending," T. at 778-81, and Dr. Auerbach's opined limitations that plaintiff could only "occasionally climb . . ., balance, stoop, kneel, crouch or crawl," Id. at 109-10, the ALJ did not explain why these limitations were not included in the RFC.  See id.

at 1294-95.  These issues were explicitly identified by the Appeals Council in the remand order, where it directed the ALJ to "give further consideration" to the medical opinions and maximum RFC, and "provide appropriate rationale with specific references to evidence of record in support[.]"  Id. at 1358-59.  In fact, the ALJ's explanation in the second decision provides no more discussion on this issue than was provided in the first decision.  See id. at 24-25 (noting Dr. Lorensen's and Dr. Auerbach's opined postural limitations but failing to discuss their supportability or consistency).  Such virtually-verbatim repetition does not satisfy the directives of the Appeals Council and constitutes error.  See Kenya K. G. o/b/o C.X.A. v. Saul, No. 5:19-cv-1479 (DJS), 2020 WL 13929056, at *3 (N.D.N.Y. Dec. 30, 2020) (finding error in the ALJ's second decision after remand from the Appeals Council where "[a] comparison of the decisions . . . shows that following remand the ALJ provided a nearly verbatim repetition of the insufficient analysis").

However, the undersigned finds that this error is ultimately harmless.  See Johnson, 817 F.2d at 986 (noting that "[w]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration") (citing Havas v. Bowen, 804 F.2d 783, 786 (2d Cir. 1986)).  As the Commissioner notes, plaintiff was found able to perform a range of light work and was found not disabled at step five under the Grids.  See T. at 1292, 1299-1300.  Postural limitations such as climbing, balancing, stooping, kneeling, crouching, or crawling have little effect on the occupational base of sedentary and light work under the Grids.  See SSR 85-15, "Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Non-exertional Impairments," 1985 WL 56857, at

*6-7 (S.S.A. 1985).  "Bending" (as opined by Dr. Lorensen) is included in stooping.  <u>See</u> <u>id.</u> at *7 ("Some stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are involved.").  Thus, remand for further consideration of the ALJ's failure to consider these postural limitations is unwarranted as harmless error.  <u>Cf.</u>, <u>e.g.</u>, <u>Tonya B. o/b/o A.M.C. v. Comm'r of Soc. Sec.</u>, No. 5:21-cv-00787, 2022 WL 4616971, at *13 (N.D.N.Y. Sept. 30, 2022) (recognizing the applicability of the harmless error doctrine to an ALJ's legal error in failing to follow a remand order from the Appeals Council); <u>Angela M. v. Comm'r of Soc. Sec.</u>, 551 F. Supp. 3d 95, 100 (W.D.N.Y. 2021) (same) (citing <u>Schaal v. Apfel</u>, 134 F.3d 496, 505 (2d Cir. 1998)); <u>with</u>, <u>e.g.</u>, <u>Beisel v.</u> <u>Colvin</u>, No. 3:12-cv-00623 (AC), 2013 WL 4095204, at *6 (D. Or. Aug. 8, 2013) (finding that, to the extent that the ALJ erred in failing to follow a remand order, such error was harmless and required affirmance); <u>Rogers v. Astrue</u>, No. 06-cv-01258 (TAG), 2008 WL 850131, at *16 (E.D. Cal. Mar. 28, 2008) (same) (citing <u>Batson v. Commissioner of Soc.</u> <u>Sec.</u>, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion)).

### iii. Remaining Physical RFC Findings

        The undersigned notes that plaintiff's challenge to the physical RFC findings appears to focus solely on the ALJ's consideration of her cane usage and postural limitations.  <u>See</u> Dkt. No. 15 at 24-28.  However, plaintiff also generally asserts that "[t]he ALJ did not cure the errors identified by the Appeals Council[;] erred in her evaluation of [p]laintiff's allegations and the medical opinions[;] failed to identify the evidence supporting the RFC finding[;] and failed to meet the Commissioner's burden at

step 5 without vocational expert testimony." See id. at 19.  To the extent this brief argument is meant to challenge the ALJ's remaining findings on plaintiff's physical RFC, the Court provides this response.

First, plaintiff contends this case should be remanded solely because the ALJ failed to address the Appeals Council's observation that the first decision "did not include a proper evaluation of the medical opinion evidence and prior administrative findings" and "does not adequately explain how the medical evidence of record supports the [RFC] for a reduced range of light work." See Dkt. No. 15 at 19.  The Appeals Council's commentary on this topic focused on the persuasiveness of the opinions from Drs. Ganesh, Lorensen, and Auerbach. See T. at 1358-59.  In the first decision, the ALJ simply noted Drs. Ganesh and Lorensen's opinions, then concluded they were "consistent, though based on examinations conducted 9 months apart," and were "generally persuasive to the extent that they are consistent with the examination findings and the medical evidence of record."  T. at 24.  The ALJ's treatment of Dr. Auerbach's opinion in the first decision was similarly cursory. See id. at 25.  In contrast, the ALJ reasoned in the second decision that, for Drs. Ganesh and Lorensen:

> I am partially persuaded by the[se] opinions . . . because they are both supported by detailed physical examinations of the claimant[,] (Exhibits B10F, pages 2-3; B12F, pages 2-3)[,] are also consistent with one another, and consistent with the fact that [plaintiff's] symptoms improved significantly after undergoing artery bypass surgery and stenting (Exhibits B15F, pages 4, 16), her lack of compliance with taking insulin (Exhibit B3F, page 30), and physical examinations documenting that her lungs were clear to auscultation (Exhibits B16F, page 3; B20F, pages 23, 26; B24F, page 5; B26F, page 7; B28F, pages 2, 5).
>
> . . . In addition, Dr. Ganesh's and Dr. Lorensen's opinions are not fully supported by examinations documenting decreased

> sensation in the left leg (Exhibit B16F, pages 12, 16, 20, 24, 32), and antalgic gait (Exhibit B16F, pages 24 and 32), which results in greater restrictions for standing and walking than they identified. [These findings are accounted for] by limiting the claimant to standing and/or walking for two hours during an eight-hour workday.

T. at 1294. For Dr. Auerbach, the ALJ elaborated on the "partially persuasive" finding by citing to similar records as with Drs. Ganesh and Lorensen. See id. at 1295. The remand order did not compel a specific finding on any of these opinions and left to the ALJ's discretion whether to seek additional evidence. See James C. v. Comm'r of Soc. Sec., No. 5:19-cv-1206 (TWD), 2020 WL 6445907, at *7 (N.D.N.Y. Nov. 3, 2020) ("[T]he Appeals Council's remand order qualifies its directions to the ALJ through the use of terms such as '[i]f necessary,' and 'if warranted.' [ ] Therefore, the bulk of the Appeals Council's directions merely call for [the ALJ] to exercise her discretion regarding evaluation of the opinion and other evidence and the development of the record, so long as she complied with the applicable regulations."). Given that the Appeals Council only directed the ALJ to "give further consideration" to these medical opinions and RFC, and the ALJ did so with the support of substantial evidence, see supra, the undersigned finds no error in the ALJ's interpretation of the remand order. See Lara M., 2023 WL 10365082, at *12 (finding Appeals Council's order satisfied "on its face" ALJ addressed issues outlined in remand order); James C., 2020 WL 6445907, at *7.

As to whether the ALJ properly crafted plaintiff's RFC and resolved the inconsistencies between the opinions on plaintiff's physical limitations, the undersigned finds the decision in line with the regulations. The ALJ noted her conclusions on the supportability and consistency of these medical opinions, as per 20 C.F.R. § 416.920c, and provided citations to evidence in the record to support those conclusions—both in

the paragraphs resolving those opinions, see id. at 1294-95, and in her discussion of the evidence later in the decision, see id. at 1296-97.  Aside from the opinions on plaintiff's use of a cane and postural limitations, see Section IV. B. 2, supra, none of the medical sources opined limitations greater than what the ALJ found in the RFC, and plaintiff provides no specific argument indicating the RFC should have been more restrictive.  See N.D.N.Y. G.O. 18 § C(1)(D) ("The issues before the Court are limited to the issues properly raised in the briefs.").  In fact, the only other significant difference between these medical opinions and the ALJ's findings concerns plaintiff's ability to stand and walk—where the ALJ assigned greater limitations.  See T. at 1294-95 (assigning stand/walk limitation of two hours, as opposed to no limits or four-hour limit opined by the doctors).  Such reduction of limitations in the RFC is not error.  See Ramsey v. Comm'r of Soc. Sec., 830 F. App' x 37, 39 (2d Cir. 2020) (summary order) (upholding an RFC finding where "the ALJ occasionally deviated from consultative examiners' recommendations to decrease [the claimant's] RFC based on other evidence in the record").  To the extent plaintiff argues that the ALJ should have supplemented the record with additional medical opinions, the undersigned reminds that plaintiff carries the burden at the first four steps.  DeChirico, 134 F.3d at 1180, see also Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required.").

Accordingly, the undersigned finds the ALJ's findings on the medical opinions of Drs. Ganesh, Lorensen, and Auerbach, and on plaintiff's RFC, to be free from legal

error and supported by substantial evidence.  See Galo G., 2021 WL 5232722, at *5 (finding the precepts of 20 C.F.R. § 416.920c(c)(1)-(2) met where the ALJ provided persuasiveness conclusions on a medical opinion backed up by corresponding evidence that demonstrated the limitations expressed in the opinion lacked support and were inconsistent); Thomas H. v. Comm'r of Soc. Sec., 675 F. Supp. 3d 330, 335 (W.D.N.Y. 2023) ("An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear.") (quoting Curry v. Comm'r of Soc. Sec., 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order)).

### b. Mental Impairments

Plaintiff contends that the ALJ erred at multiple points in resolving her mental limitations.  See Dkt. No. 15 at 28-35.  This argument is multifaceted, as plaintiff contends that the ALJ failed to follow the Appeals Council's directions on this issue, failed to incorporate any limitations in the RFC corresponding to the moderate findings at step three, failed to properly evaluate the medical opinions in the record, and failed to explain the basis for the RFC findings.  See id.

First, the undersigned does not find the ALJ erred in considering the letter and spirit of the Appeals Council's remand order regarding plaintiff's mental impairments. See Krawczyk v. Berryhill, 17-cv-01311 (MAT), 2019 WL 244491, at *4 (W.D.N.Y. Jan. 17, 2019) (reminding that the "rule of mandate" in the Social Security context requires on remand that the agency's "actions must be consistent with both the letter and the spirit of the higher court's decision") (collecting cases).  The Appeals Council did not discuss the ALJ's analysis of plaintiff's mental impairments anywhere in the remand

order.  See T. at 1358-1360.  Instead, the remand order focused solely on plaintiff's

physical limitations and the opinions of Drs. Ganesh, Lorensen, and Auerbach (none of

whom opined on plaintiff's mental limitations).  See id.  Thus, the undersigned finds no

error in the ALJ's interpretation of the Appeals Council's remand order on plaintiff's

mental limitations.  See Frank K. v. Comm'r of Soc. Sec., 371 F. Supp. 3d 163, 171 (D.

Vt. 2019) ("The Second Circuit has observed that the mandate rule 'does not extend to

issues an appellate court did not address.'") (quoting New England Ins. Co. v.

Healthcare Underwriters Mut. Ins. Co., 352 F.3d 599, 606 (2d Cir. 2003)); see also Lara

M., 2023 WL 10365082, at *12 (affirming ALJ's second decision where the ALJ satisfied

the directives of the Appeals Council "on its face").

        Next, plaintiff generally argues that the ALJ failed to adopt any of the "moderate"

limitations, as found by the ALJ at step three, into the RFC determination.  See Dkt. No.

29.  Here, the ALJ found plaintiff moderately limited in her ability to understand,

remember, or apply information, and to concentrate, persist, or maintain pace.  See T.

at 1291.  However, the Paragraph B assignments correspond to the analysis at steps

two and three, and the regulations do not "require any specific corresponding limitation

in the RFC finding."  Maura B. C. v. Comm'r of Soc. Sec., No. 5:21-cv-0294 (DEP),

2022 WL 2789102, at *6 (N.D.N.Y. Jul. 15, 2022) ("'While the analysis at steps two and

three concerns the functional effects of mental impairments, the RFC analysis at step

four specifically considers work-related physical and mental activities in a work setting,'

such that 'a finding at steps two or three does not automatically translate to an identical

finding [in the RFC].'") (quoting Wells v. Colvin, 87 F. Supp. 3d 421, 436 (W.D.N.Y.

2015), citing Golden v. Colvin, 5:12-cv-0665 (GLS/ESH), 2013 WL 5278743, at *3

(N.D.N.Y. Sept. 18, 2013)); see also SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. Jul. 2,

1996) ("The adjudicator must remember that the limitations identified in the 'paragraph

B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the

severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.

The mental RFC assessment used at steps 4 and 5 of the sequential evaluation

process requires a more detailed assessment by itemizing various functions contained

in the broad categories found in paragraphs B and C . . . .").

Turning to the work-related limitations, plaintiff next contends that the ALJ failed

to properly evaluate the medical opinions in the record and properly explain the basis

for the RFC.  See Dkt. No. 15 at 30-35.  The ALJ found that plaintiff had the RFC to do

light work, with the additional restrictions that she:

> [Could only] perform[] work that needs little or no judgment to
> do simple duties that may be learned on the job in a short
> period of time[; could] understand and follow simple
> instructions and directions, perform simple tasks
> independently, maintain attention/concentration for simple
> tasks, regularly attend to a routine and maintain a schedule,
> [and] relate to and interact appropriately with all others to the
> extent necessary to carry out simple tasks; [and] can handle
> simple, repetitive work-related stress in that [she] can make
> occasional decisions directly related to the performance of
> simple tasks in a position with consistent job duties that does
> not require [her] to supervise or manage the work of others.

T. at 1293.  In doing so, the ALJ noted the medical opinions from Dr. Lauren Hoffman,

PhD.; Dr. Michelle Marks, PhD.; Dr. Jeanne Shapiro, PhD.; and Dr. Corey Anne Grassl,

PsyD.  See id. at 1295-96.  The ALJ was "not very persuaded" by Dr. Grassl's opinion

but was "generally persuaded" by the other three opinions.  Id.

Dr. Grassl opined after a November 19, 2019, examination that plaintiff was

markedly limited in her ability to "sustain concentration and perform a task at a

consistent pace, sustain an ordinary routine and regular attendance at work, and regulate emotions, control behavior, and maintain well-being." T at 765. The ALJ found this portion of Dr. Grassl's opinion to be unsupported because, during the exam, Dr. Grassl noted plaintiff was, among other things "cooperative with adequate manner of relating, social skills, and overall presentation, [had] normal posture and motor behavior, [and had] appropriately focused eye contact, intelligible and fluent speech, adequate expressive and receptive language skills, coherent and goal directed thought processes . . ., intact attention and concentration skills. . . , fair insight, and fair judgment." Id. at 1295-96 (citing id. at 765-66). This comports with the relevant regulations that, for supportability, the ALJ examine the doctor's citation to medical evidence and supporting explanations. See 20 C.F.R. § 416.920c(c)(1); Kathleen A., 2022 WL 673824, at *4. More importantly, the evidence cited by the ALJ correlates to, and conflicts with, the marked limitations opined by Dr. Grassl. See Tammy G. v. Comm'r of Soc. Sec., No. 6:21-cv-1184 (GLS/DJS), 2022 WL 19334537, at *4 (N.D.N.Y. Nov. 15, 2022) (finding that an examining doctor's note that the plaintiff was "well groomed with normal motor behavior, clear and fluent speech, and coherent thought processes with no evidence of hallucinations, delusions, or paranoia" to reasonably conflict with the doctor's opinion that the plaintiff was markedly limited in being able to adapt or manage oneself); Charlotte K. v. Comm'r of Soc. Sec., No. 3:17-cv-642 (ATB), 2018 WL 4153925, at *10 (N.D.N.Y. Aug. 29, 2018) (finding that the plaintiff's "generally intact attention and concentration" did not align with an inability to stay "on-task").

The ALJ also found the marked limitations opined by Dr. Grassl to be inconsistent with the multiple mental status examinations in the record. See T. at 1296

(citing id. at 784-85, 861, 1484, 1510-11, 1520, 1845).  Further, the ALJ noted the three

other medical opinions from Drs. Hoffman, Marks, and Shapiro all assigned less-than-

marked limitations in the Paragraph B categories.  See id. at 91-95, 107-115, 784-85.

Drs. Hoffman and Marks translated plaintiff's functional limitations into work-related

abilities that the ALJ adopted into the RFC.  Cf. id. at 91-95, 107-115, with id. at 1293.

The ALJ found Dr. Shapiro's opinion supported by her "thorough mental status

evaluation," Drs. Hoffman and Marks's opinions supported by their review of the record,

and all three opinions to be consistent with, among other things, the same mental status

exams used to discount Dr. Grassl's opinion.  See id. at 1295.  The ALJ also cited the

same mental status exams used to discount Dr. Grassl's opinion in finding the other

three doctors' opinions consistent with the record.  The ALJ's findings on the

consistency of the four medical opinions correspond to the relevant regulations and are

backed by substantial evidence.  See 20 C.F.R. § 416.920c(c)(2); Kathleen A., 2022 WL

673824, at *5; Tammy G., 2022 WL 19334537, at *4; Charlotte K., 2018 WL 4153925,

at *10.

    In addition to the above, the ALJ thoroughly discussed plaintiff's mental health

treatment later in the decision, detailing the mental status examinations in the record

from February 2019 through June 2021.  See T. at 1298.  This description of the

medical record, paired with the ALJ's conclusions on the medical opinions, allows the

Court to glean the ALJ's rationale and evidence relied upon.  See Wanda N., 2022 WL

4376484, at *7 (citing John L. M., 2022 WL 3500187, at *2).  Further, the ALJ's reliance

on these medical records and medical opinions provide substantial evidence for the

ALJ's RFC finding, which, as has been discussed, is an administrative finding "within

the province of the ALJ."[9]  Thomas H., 675 F. Supp. 3d at 335 (quoting Curry, 855 F.

App'x at 48 n.3).  Finally, to the extent plaintiff argues that the ALJ should have

supplemented the record with additional medical opinions, the undersigned reminds that

plaintiff carries the burden at the first four steps.  DeChirico, 134 F.3d at 1180, see also

Monroe, 676 F. App'x at 8.

## C. Complex Regional Pain Syndrome ("CRPS")

Plaintiff's second point on appeal contains one additional argument: that the ALJ

failed to consider plaintiff's complex regional pain syndrome at step two and beyond.

See Dkt. No. 15 at 21-24.  Plaintiff correctly notes that "the ALJ did not mention CRPS

anywhere in the decision," and this error is not harmless because the ALJ could not

reject her statements of pain without considering the disproportionate effect CRPS has

on her work-related abilities.  See id.

## 1. Legal Standards

At step two of the sequential evaluation process, the ALJ must determine

whether the plaintiff has a severe impairment that significantly limits his or her physical

or mental ability to do basic work activities.  See 20 C.F.R. § 416.920(c).  This step is

limited to "screen[ing] out de minimis claims."  Dixon v. Shalala, 54 F.3d 1019, 1030 (2d

Cir. 1995).  The "mere presence of a disease or impairment or establishing that a

---

[9] Plaintiff's challenge here focuses on the melding of Dr. Grassl's opinion with the RFC, as analyzed in this section.  See Dkt. No. 15 at 28-35.  However, at times, plaintiff appears to assert that the ALJ should have found Dr. Grassl's assessment of "marked" limitations to be persuasive for purposes of the step three analysis, which could have led to a disability finding under the Listings.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b) (stating that a "claimant can satisfy the 'paragraph B' criteria by showing '[e]xtreme limitation of one, or marked limitation of two,'" of the four categories).  To the extent plaintiff argues the ALJ's step three findings should have differed based on Dr. Grassl's opinion, the undersigned finds that the result is the same.  Simply, because the ALJ properly found Dr. Grassl's marked unpersuasive, the court sees no error in the ALJ's resolution of plaintiff's mental impairments—at both steps three and in the RFC formulation.

person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995).

An ALJ's failure to classify an impairment as severe at step two is harmless if the ALJ considers the omitted impairment in later portions of the five-step sequence. See O'Connell v. Colvin, 558 F. App'x 63, 65 (2d Cir. 2014) (summary order) (finding the ALJ's omission of a right knee impairment to be harmless error because the ALJ found other severe impairments and "specifically considered" the right knee dysfunction in later steps); Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (classifying the ALJ's omission of anxiety and panic disorders as harmless error because the ALJ identified other severe impairments and "specifically considered" anxiety and panic attacks in later steps).

### 2. Analysis

Social Security Ruling 03-2p defines CRPS as a "constellation of symptoms and signs that may occur following an injury to bone or soft tissue," which manifests itself through complaints of intense pain typically localized to the site of an injury that most commonly results in "autonomic dysfunction at the site of the precipitated trauma." SSR 03-2p, "Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome," 2003 WL 22399117 (S.S.A. Oct. 20, 2003). "Individuals diagnosed with CRPS often report [] pain at the site of the injury that is out of proportion to the severity of the injury due to the abnormal function of the sympathetic nervous system that is impacted by the trauma, and may complain about muscle pain, joint swelling, restricted mobility, or abnormal hair or nail growth in

36

the affected site." <u>Stormie H. v. Comm'r of Soc. Sec.</u>, No. 6:23-cv-06619 (EAW), 2024 WL 3579127, at *4 (W.D.N.Y. Jul. 30, 2024) (citing SSR 03-2p, 2003 WL 22399117). According to SSR 03-2p, a CRPS diagnosis "requires the presence of complaints of persistent, intense pain that results in impaired mobility of the affected region" and are associated with:

- swelling;
- autonomic instability—seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), skin temperature changes, or abnormal pilomotor erection (gooseflesh);
- Abnormal hair or nail growth (growth can be either too slow or too fast);
- Osteoporosis; or
- Involuntary movements of the affected region of the initial injury.

<u>See</u> 2003 WL 22399117.  For purposes of Social Security disability, CRPS qualifies as a medically determinable impairment when documented by "medical signs, symptoms, and laboratory findings" of the above, though not solely through the individual's symptom statements.  <u>See</u> <u>id.</u>  This means:

> When longitudinal treatment records document persistent limiting pain in an area where one or more of [the] abnormal signs has been documented at some point in time since the date of the precipitating injury, disability adjudicators can reliably determine that []CRPS is present and constitutes a medically determinable impairment.  It may be noted in the treatment records that these signs are not present continuously, or the signs may be present at one examination and not appear at another.  Transient findings are characteristic of []CRPS, and do not affect a finding that a medically determinable impairment is present.

<u>See</u> <u>id.</u>

Here, Dr. Harold Horowitz, D.P.M., noted symptoms corresponding to plaintiff's PAD on May 10, 2019.  <u>See</u> T. at 698-702.  Dr. Horowitz noted plaintiff had "thick and

dystrophic elongated discolored nails on ten toes with mild pain on occasion," burning and tingling in her toes, decreased hair growth on her feet and toes, thickened nails and discoloration and pigment changes in her skin." Id. at 700.  On June 4, 2019, Plaintiff's pain management doctor, Dr. Denny Battista, M.D. diagnosed plaintiff with CRPS.  See id. at 830.  Dr. Battista noted plaintiff's complaints of pain in her left lower leg, deemed persistent and moderate-severe, and found that it radiated up plaintiff's leg, gave a "sharp, stabbing, burning type sensation," and was aggravated by physical activity.  Id. at 829.  Dr. Battista also noted plaintiff's complaint of "right leg pain due to compensating," as well as her decreased lumbar range of motion and decreased reflexes in her left leg.  Id. at 829, 831.  Over plaintiff's next seven appointments to Dr. Battista's office in the year following, she reasserted her increasing pain and associated symptoms, Dr. Battista reconfirmed plaintiff's CRPS diagnosis, and plaintiff's exam results showed similar physical limitations, including a finding of slight swelling in her left leg in May 2020.  See id. at 833-61.

This evidence meets SSR 03-2p's test for whether plaintiff's CRPS was a medically-determinable impairment, as it shows plaintiff had a CRPS diagnosis that was continually reconfirmed by Dr. Battista between 2019 and 2020, made "complaints of persistent, intense pain" after her February 2019 bypass surgery, had impaired mobility in her feet and multiple associated conditions including swelling, autonomic instability, and abnormal hair and nail growth.  See SSR 03-2p (noting ALJs can find CRPS a medically-determinable impairment where medical records show "persistent limiting pain in an area where one or more of [the] abnormal signs has been documented at some point in time since the date of the precipitating injury, even if the signs are sporadic, not

present continuously, or transient"). Because CRPS was a medically-determinable impairment, the ALJ erred in not evaluating its severity at step two. See Robert B. v. Comm'r of Soc. Sec., No. 20-cv-1596 (FPG), 2022 WL 392141, at *3 (W.D.N.Y. Feb. 9, 2022) (finding error at step two where the evidence showed the plaintiff's CRPS was a medically-determinable impairment and the ALJ did not discuss CRPS in the decision); Ryan W. v. Kijakazi, No. 20-cv-1557 (DGL), 2022 WL 117955, at *3 (W.D.N.Y. Jan. 12, 2022) (same); Sandra C. v. Saul, No. 3:19-cv-942 (RAR), 2021 WL 1170285, at *4 (D. Conn. Mar. 29, 2021) (same).

The Commissioner argues that any such error in the ALJ's failure to discuss CRPS is harmless, as the ALJ "considered [p]laintiff's pain and related symptoms, including the incidences [p]laintiff cites to, throughout the [d]ecision, including when determining the persuasiveness of the medical opinion and formulating the RFC." Dkt. No. 18 at 13 (citing T. at 1292-99). The Commissioner also notes that Dr. Battista recommended a spinal cord stimulator to treat plaintiff's CRPS, but plaintiff never followed through with obtaining one; thus, the Commissioner argues the Court should discard plaintiff's complaints of pain for failure to follow a course of prescribed treatment. See Dkt. No. 18 at 13 (citing SSR 16-3p, 2017 WL 5180304, at *9 (stating that if the claimant "fails to follow prescribed treatment that might improve symptoms," the ALJ may find that the alleged intensity and persistence of the symptoms are inconsistent with the evidence in the record)).

However, as plaintiff correctly notes, this is not a case where the ALJ considered an alleged medically-determinable impairment, found it non-severe at step two, and then considered the effects of the non-severe impairment when crafting the plaintiff's

RFC.  See, e.g., Nicolette H. v. Kijakazi, No. 21-cv-248 (LGF), 2023 WL 2581537, at *5 (W.D.N.Y. Mar. 21, 2023) ("In the instant case, despite considering [the plaintiff's] CRPS to be a non-severe impairment at [s]tep [t]wo, the ALJ specifically stated that 'the [RFC] assessment fully accounts for any dysfunction from the claimant's non-severe impairments'[;] accordingly, even if the ALJ erred in failing to consider [the p]laintiff's CRPS to be a non-severe impairment, such error was harmless and provides no basis for remand."); Michael C. v. Comm'r of Soc. Sec., No. 6:17-cv-920 (GLS), 2018 WL 4689092, at *4 (N.D.N.Y. Sept. 28, 2018) (noting that "even if the ALJ erred in classifying the [plaintiff's CRPS] as non-severe, it would be harmless error because the ALJ proceeded past step two and considered the effects of all of his symptoms."); Susan B. v. Comm'r of Soc. Sec., 515 F. Supp. 3d 225, 236 (D. Vt. 2021) (finding harmless error where the ALJ found CRPS non-severe but "considered those impairments in the remaining steps of the sequential disability analysis").

Instead, this case is more akin to those where the ALJ ignored a medically-determinable impairment at every step, and so the courts could not find harmless error, despite the ALJ's consideration of pain in the subsequent steps.  See Karlene S. v. Comm'r of Soc. Sec., 6:21-cv-06005 (EAW), 2023 WL 1097463, at *5 (W.D.N.Y. Jan. 30, 2023) ("[T]he step two harmless error doctrine only applies to impairments that are deemed by the ALJ to be non-severe, and not to impairments . . . that an ALJ finds not medically determinable.") (collecting cases); see also Robert B., 2022 WL 392141, at *3 (declining to find harmless error because, "[a]lthough some of [the plaintiff's] symptoms could be attributable to the impairments the ALJ did find severe . . . , CRPS is a distinct impairment with distinct symptomology and effects."); Ryan W., 2022 WL 117955, at *3

(declining to find harmless error where "the ALJ did not address or analyze [the] plaintiff's CRPS at any point in his decision, and it is unclear to what extent the ALJ's consideration of associated conditions or symptoms (such as plaintiff's degenerative joint disease of the left knee, or drop foot), might have accounted for some of his CRPS-related limitations"); Sandra C., 2021 WL 1170285, at *4 ("Because the ALJ did not establish CRPS as a medically determinable impairment, the ALJ did not evaluate the intensity, persistence, and limiting effects of plaintiff's CRPS symptoms to determine the extent to which they limit plaintiff's ability to work.").

Thus, to the extent the Commissioner requests that the Court find this issue harmless by parsing whether plaintiff's pain is a result of her CRPS, one of her other impairments, or a combination thereof, the undersigned reminds the Commissioner that it is for the ALJ to resolve inconsistencies in the medical evidence. See Martone, 70 F. Supp. 2d at 148; Clark, 143 F.3d at 118. Further, the undersigned cannot recommend that the Court discount plaintiff's pain statements due to her failure to obtain the spinal cord stimulator, as this kind of analysis is appropriate only where a medically-determinable impairment has first been found. See SSR 16-3p (reminding that ALJ's should evaluate a claimant's symptom statements "after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms.") (emphasis added).

### V. Conclusion

Wherefore, for the reasons stated herein, it is hereby:

**ORDERED**, that Commissioner's request for an extension of time (Dkt. No. 17) to file its cross-motion for judgment on the pleadings is **GRANTED**; thus, the Commissioner's brief at Docket Number 18 is deemed timely filed; and it is

**RECOMMENDED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 15) be **GRANTED**, and it is further

**RECOMMENDED**, the Commissioner's motion for judgment on the pleadings (Dkt. No. 18) be **DENIED**, and the matter be **REMANDED** to the Commissioner for further proceedings; and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1999)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: December 9, 2024
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge